**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 25-5476, 25-5478, 26-5099,
26-5102, 26-5182**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,
*Plaintiffs-Appellees*,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,
*Defendants-Appellants*,

REPUBLICAN NATIONAL COMMITTEE
*Intervenor-Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

# OPENING BRIEF FOR FEDERAL DEFENDANTS-APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL S. RAAB
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici

Plaintiffs in district court, and appellees here, are League of United Latin American Citizens; Secure Families Initiative; Arizona Students' Association; League of Women Voters of the United States; League of Women Voters of Arizona; Hispanic Federation; National Association for the Advancement of Colored People; OCA-Asian Pacific American Advocates; League of Women Voters Education Fund; Asian and Pacific Islander American Vote; Democratic National Committee; Democratic Governors Association; DSCC; DCCC; Charles E. Schumer; and Hakeem S. Jeffries. Defendants in the district court, and appellants here, are the Executive Office of the President; U.S. Election Assistance Commission; Brianna Schletz, in her official capacity as Executive Director of the U.S. Election Assistance Commission; Donald Palmer, in his official capacity as Commissioner and Chairman of the U.S. Election Assistance Commission; Thomas Hicks, in his official capacity as Commissioner and Vice-Chair of the U.S. Election Assistance

Commission; Christy McCormick, in her official capacity as Commissioner of the U.S. Election Assistance Commission; Benjamin Hovland, in his official capacity as Commissioner of the U.S. Election Assistance Commission; U.S. Department of Justice; Todd Blanche, in his official capacity as Attorney General of the United States; U.S. Department of Defense; Peter B. Hegseth, in his official capacity as U.S. Secretary of Defense; Federal Voting Assistance Program; and J. Scott Wiedmann, in his official capacity as Director of the Federal Voting Assistance Program. Republican National Committee is an intervenor-defendant. Before the district court, the following participated as amicus curiae: Constitutional Accountability Center; Bipartisan Former State Secretaries of State; Restoring Integrity and Trust in Elections, Inc.; Republican Party of Arizona, LLC; Lawyers Defending American Democracy, Inc.; Robert Thomas Peterson. Lawyers Defending American Democracy, Inc. has filed a notice of intention to participate as amicus curiae before this Court.

### B. Rulings Under Review

The rulings under review are the final judgment entered in the consolidated cases on March 31, 2026, and the prior partial summary

judgment orders and opinions entered on October 31, 2025, and January 30, 2026. *See League of United Latin Am. Citizens v. Executive Off. of the President*, 818 F. Supp. 3d 34 (D.D.C. 2026); *League of United Latin Am. Citizens v. Executive Off. of the President*, 808 F. Supp. 3d 29 (D.D.C. 2025); *League of United Latin Am. Citizens v. Executive Off. of the President*, No. 25-cv-0952, 2026 WL 880056 (D.D.C. Mar. 31, 2026).

**C. Related Cases**

There are no related cases currently pending before this Court. Two similar challenges to the Executive Order at issue in this case brought by different plaintiffs are currently pending before the U.S. Courts of Appeals for the First and Ninth Circuits. *See California v. Trump*, Nos. 25-1726, 26-2038 (1st Cir.); *Washington v. Trump*, No. 26-1429 (9th Cir.).

*/s/ Laura E. Myron*
LAURA E. MYRON
*Counsel for Federal Defendants*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ vi

GLOSSARY ........ x

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

STATEMENT OF THE ISSUE ........ 4

PERTINENT STATUTES AND REGULATIONS ........ 4

STATEMENT OF THE CASE ........ 4

A. Statutory Background ........ 4

1. Federal Form for Voter Registration ........ 5

2. Registration for Voting by Citizens Overseas ........ 7

B. Factual Background ........ 9

C. Prior Proceedings ........ 10

SUMMARY OF ARGUMENT ........ 15

STANDARD OF REVIEW ........ 19

ARGUMENT ........ 19

I. SECTION 2(a) OF THE ORDER IS LAWFUL. ........ 19

A. Plaintiffs' Challenge to Section 2(a) is Not Ripe. ........ 20

B. Section 2(a) Does Not Violate the Constitution. ........ 30

II. SECTION 2(d) OF THE ORDER IS LAWFUL. ........ 39

A. Section 2(d) is Consistent with the NVRA and Does Not Violate the Separation of Powers. .......... 39

B. Plaintiffs' Challenge to Section 2(d) is Not Ripe. .......... 42

II. SECTION 3(d) OF THE ORDER IS LAWFUL. .......... 43

A. Plaintiffs' Challenge to Section 3(d) is Not Ripe. .......... 43

B. Section 3(d) is Consistent with Statutory Authority and Constitutional. .......... 44

CONCLUSION .......... 49

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) .......... 29

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 5, 6, 7, 22, 32, 37, 38, 46, 48

*Building & Construction Trades Department v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) .......... 27, 28, 33, 40

*Changji Esquel Textile Co. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) .......... 39

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000) .......... 31

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 24, 43

*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020) .......... 32

*DSCC v. Trump*,
No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) .......... 24

*Global Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .......... 38, 40, 42, 49

*League of Women Voters of the U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 11, 37

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) .......... 26

*Minerals Separation, Ltd. v. Butte & Superior Mining Co.*,
250 U.S. 336 (1919) .......... 31

*Myers v. United States*,
272 U.S. 52 (1926) .......... 33

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) .......................................................................... 34

*Sierra Club v. Costle*,
657 F.2d 298 (D.C. Cir. 1981) .......................................................... 34

*Texas v. United States*,
523 U.S. 296 (1998) ........................................................... 16-17, 29

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) ................................................................. 17, 29

*Thompson v. District of Columbia*,
832 F.3d 339 (D.C. Cir. 2016) .......................................................... 19

*Trump v. Am. Fed'n of Gov't Emps.*,
145 S. Ct. 2635 (2025) ...................................................................... 28

*Trump v. California*,
609 U.S. —, No. 26A124 2026 WL 2473573 (U.S. Aug. 24, 2026) ...... 24

*Trump v. New York*,
592 U.S. 125 (2020) .................................... 16, 20, 22, 23, 24, 25, 29, 43

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ...................................................................... 35

*Trump v. United States*,
603 U.S. 593 (2024) .......................................................................... 34

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ...................................................... 27-28, 34, 36, 41

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
576 U.S. 1 (2015) ............................................................................ 36, 41

**Statutes:**

28 U.S.C. § 1291 ........................................................................................ 3

28 U.S.C. § 1331 ........................................................................................ 3

28 U.S.C. § 1651 .................... 3

28 U.S.C. § 2201 .................... 3

Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 ..... 5

National Voter Registration Act of 1993
  Pub. L. No. 103-31, 107 Stat. 77 .................... 5
  52 U.S.C. § 20505 .................... 5
  52 U.S.C. § 20506 .................... 7, 10, 40, 41, 42
  52 U.S.C. § 20508 .................... 5, 6, 9, 12, 20, 21, 32, 41, 42, 46

Uniformed and Overseas Citizens Absentee Voting Act
  52 U.S.C. § 20301 .................... 8, 10, 18, 44, 45
  52 U.S.C. § 20302 .................... 8
  52 U.S.C. § 20310 .................... 8

52 U.S.C. § 20921 .................... 5

52 U.S.C. § 20929 .................... 6

**Rules:**

Fed. R. App. P. 4 .................... 3

**U.S. Constitution:**

U.S. Const. amend XVII .................... 4

U.S. Const. amend XII .................... 4

U.S. Const. art. I, § 2, cl. 1 .................... 4

U.S. Const. art. I, § 4, cl. 1 .................... 4, 31

U.S. Const. art. II, § 1, cl. 1 .................... 33

**Other:**

32 C.F.R. pt. 233 .................... 8

53 Fed. Reg. 21,975 (June 10, 1988) .................... 8

85 Fed. Reg. 44,679 (July 23, 2020) .......................................... 23, 24

90 Fed. Reg. 14,005
(Mar. 28, 2025) ....... 1, 9, 10, 13, 15, 19, 20, 21, 25, 27, 39, 40, 41, 42, 43

91 Fed. Reg. 17,125 (Apr. 3, 2026) .......................................... 23

Fed. Voting Assistance Program, *Voter Registration and Absentee Ballot Request*, http://perma.cc/WZM3-8PTL .......................................... 8, 47

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| EAC or Commission | Election Assistance Commission |
| NVRA | National Voter Registration Act |
| Secretary | Secretary of the U.S. Department of Defense |
| UOCAVA | Uniformed and Overseas Citizens Absentee Voting Act |

## INTRODUCTION

These consolidated cases present a challenge to Executive Order 14,248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005 (Mar. 28, 2025) (Order); *see* JA235-JA240. As relevant here, the Order does three things. First, it directs the Election Assistance Commission (EAC or Commission)—the federal agency with statutory authority under the National Voter Registration Act (NVRA) to develop and amend the Federal Voter Registration Form—to take appropriate action to add a documentary proof-of-citizenship requirement to that Form. Second, it directs federal agencies that have been designated under the NVRA as federal voter registration agencies to assess an applicant's citizenship before distributing the Federal Form (but notably does not direct them to withhold the Form based on that assessment). And third, the Order directs the Secretary of the U.S. Department of Defense to exercise his authority under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to add a documentary proof-of-citizenship requirement to the Federal Post Card Application that military and overseas voters may use to register to vote absentee in federal elections.

The district court held each of these provisions of the Order unlawful and permanently enjoined their enforcement. Although the Court recognized that none of plaintiffs' Administrative Procedure Act (APA) claims were justiciable because there had been no final agency action at the time the litigation commenced, it nonetheless found that each provision was unconstitutional under the Elections Clause and the separation-of-powers. This was error.

None of plaintiffs' challenges to the Executive Order are ripe. The district court repeatedly misconstrued the provisions of the Order and the various statutory authorities. Contrary to the court's view, the Order is a directive by the President, as head of the Executive Branch, to his subordinates to take action consistent with federal law. Because no federal agencies had yet acted to carry out the Order prior to the commencement of this suit, the consolidated challenges are not ripe. And even if the challenges were justiciable, nothing in the Order runs afoul of the Elections Clause or the separation of powers. Neither plaintiffs nor the court contend that Congress lacked authority to delegate to various federal agencies the ability to develop, amend and distribute the Federal Form and the Federal Post Card Application. The

Order merely directs those agencies to carry out certain policy preferences of the President consistent with the congressional delegations in the NVRA and UOCAVA. Even if the court were correct that the Order was in excess of the provided statutory authority, at most that would establish a statutory violation, not a constitutional problem. This Court should reverse the district court's summary judgment orders and vacate the permanent injunctions.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1651, 2201, and 2202. *See* JA81; JA166; JA283. The district court issued partial summary judgment orders on October 31, 2025, JA575-JA577, and January 30, 2026, JA663-JA667, and issued its final judgment resolving the remaining claims on March 31, 2026, JA780-JA784. The federal defendants filed a timely notice of appeal on May 28, 2026.[1] *See* Fed. R. App. P. 4(a); JA787. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] The federal defendants and intervenor-defendant also filed notices of appeal from the prior partial summary judgment orders that permanently enjoined implementation of certain provisions of the Order. *See* JA659, JA661, JA778, JA785. Those appeals have been consolidated here.

## STATEMENT OF THE ISSUE

The question presented is whether the district court erred when it held unlawful and enjoined the implementation of Sections 2(a), 2(d), and 3(d) of Executive Order 14,248.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. Statutory Background

Under the Voter Qualifications Clause and the 12th and 17th Amendments, the Constitution empowers the States to determine who is qualified to vote in federal elections. U.S. Const. art. I, § 2, cl. 1 (House of Representatives); U.S. Const. amend XVII (Senators); U.S. Const. amend XII (President). Under the Elections Clause, U.S. Const. art. I, § 4, cl. 1, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." That Clause allows Congress to pre-empt state legislative choices with respect to "the mechanics" of federal elections, including "regulations

relating to registration," and "*how* federal elections are held, but not *who* may vote in them." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9, 16 (2013) (quotation marks omitted).

### 1. Federal Form for Voter Registration

The National Voter Registration Act of 1993, Pub. L. No. 103-31, 107 Stat. 77, addresses registration for federal elections. It requires "[e]ach State" to "accept and use the mail voter registration application form" prescribed by the Election Assistance Commission. 52 U.S.C. § 20505(a)(1).[2] This Form is commonly called the "Federal Form." *See* JA331-JA332. The Federal Form contains a general application, as well as "a number of state-specific instructions[] which tell residents of each State what additional information they must provide and where they must submit the form." *Inter Tribal*, 570 U.S. at 5-6. The Commission has authority, in consultation with the chief election officers of the States, to "develop a mail voter registration application form for

---

[2] This authority was originally exercised by the Federal Election Commission, but the Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666, reassigned that authority to the newly created Election Assistance Commission, 52 U.S.C. § 20921; *see id.* § 20508(a)(2) (The Commission "in consultation with the chief election officers of the States, shall develop a mail voter registration application form for elections for Federal office.").

elections for Federal office." 52 U.S.C. § 20508(a)(1)-(2); *see id.* § 20929 (The Commission has rulemaking authority to "take . . . action which imposes any requirement on any State or unit of local government . . . to the extent permitted under section 20508(a) of this title."); *Inter Tribal*, 570 U.S. at 5 (The Commission has "rulemaking authority to prescribe the contents of that Federal Form.").

Congress has provided some parameters for the "[c]ontents of [the] mail voter registration form" as follows:

> The mail voter registration form . . .
>
> (1) may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;
>
> (2) shall include a statement that—
> (A) specifies each eligibility requirement (including citizenship);
> (B) contains an attestation that the applicant meets each such requirement; and
> (C) requires the signature of the applicant, under penalty of perjury;
>
> (3) may not include any requirement for notarization or other formal authentication.

52 U.S.C. § 20508(b). The Federal Form does not currently require documentary proof of U.S. citizenship but only requires an applicant to

attest to citizenship under penalty of perjury. *See Inter Tribal*, 570 U.S. at 6-7; *see also* JA332 (Federal Form).

Certain federal agencies are "voter registration agencies" within the meaning of the NVRA, including any "recruitment office of the Armed Forces of the United States," 52 U.S.C. § 20506(c)(2), as well as any "Federal . . . offices" that agree to become voter registration agencies, *id.* § 20506(a)(3)(B)(ii); *see id.* § 20506(b) ("All departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a) . . . ."). "[E]ach voter registration agency" "shall" "[d]istribut[e] . . . mail voter registration application forms," *id.* § 20506(a)(4)(A)(i), and where that "voter registration agency that is an office that provides service or assistance in addition to conducting voter registration," it "shall . . . distribute with each application for such service or assistance . . . the mail voter registration application form," *id.* § 20506(a)(6)(A)(i).

### 2. Registration for Voting by Citizens Overseas

In the Uniformed and Overseas Citizens Absentee Voting Act, Congress directed that "[e]ach State shall . . . permit absent uniformed

services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C. § 20302(a)(1); *see id.* § 20310(1), (5). States are also required to "use the official post card form . . . for simultaneous voter registration application and absentee ballot application." *Id.* § 20302(a)(4). UOCAVA also directs the Secretary of Defense to "prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application," for the States to use to fulfill Congress's requirements. *Id.* § 20301(b)(2).[3] Like the Federal Form, the Federal Post Card Application contains a general application, but also it directs the applicant to state-specific instructions that are found on the Federal Voting Assistance Program website (fvap.gov). *See* Fed. Voting Assistance Program, *Voter Registration and Absentee Ballot Request*, http://perma.cc/WZM3-8PTL; *see also* 32 C.F.R. pt. 233. Unlike the

---

[3] UOCAVA specifies that the official post card form shall be prescribed by a "Presidential designee." 52 U.S.C. § 20301(a), (b). The Secretary of Defense was designated as the Presidential designee pursuant to Executive Order 12,642, *Designation of the Secretary of Defense as the Presidential Designee Under Title I of the Uniformed and Overseas Citizens Absentee Voting Act*, 53 Fed. Reg. 21,975 (June 10, 1988).

Federal Form, Congress has not provided statutory guidance on the contents of the form or limited the required contents to "only such identifying information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1) (contents of the Federal Form).

### B. Factual Background

In March 2025, the President signed Executive Order 14,248, *Preserving and Protecting the Integrity of American Elections*. *See* 90 Fed. Reg. 14,005; *see also* JA235-JA240. Three provisions of the Order are relevant here: Sections 2(a), 2(d), and 3(d).

Section 2(a)(i)(A) of the Order provides that:

> To enforce the Federal prohibition on foreign nationals voting in Federal elections . . . Within 30 days of the date of this order, the Election Assistance Commission shall take appropriate action to require, in its national mail voter registration form issued under 52 U.S.C. [§] 20508 . . . documentary proof of United States citizenship, consistent with 52 U.S.C. [§] 20508(b)(3).

90 Fed. Reg. at 14,006. Section 2(a)(ii) specifies the documents that would suffice for proof of citizenship. *Id.* Section 2(a)(i)(B) directs State or local officials to "record on the form the type of document that the

applicant presented as documentary proof of United States citizenship." *Id.*

Section 2(d) of the Order provides, in relevant part:

> The head of each Federal voter registration executive department or agency (agency) under the National Voter Registration Act, 52 U.S.C. [§] 20506(a), shall assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs.

90 Fed. Reg. at 14,007.

Finally, Section 3(d) of the Order states that "[t]he Secretary of Defense shall update the Federal Post Card Application, pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. [§] 20301, to require . . . documentary proof of United States citizenship, as defined by section 2(a)(ii) of this order." 90 Fed. Reg. at 14,007.

### C. Prior Proceedings

Three groups of plaintiffs (two groups of non-partisan entities and one group of organizations affiliated with the Democratic Party) filed suit seeking injunctive and declaratory relief to block the implementation of the Order in the U.S. District Court for the District of Columbia. The Republican National Committee intervened as defendant. The district court consolidated the three cases, JA326, and

preliminarily enjoined the implementation of two provisions of the Order—Section 2(a) and 2(d), *see* JA455-JA575. The court bifurcated summary judgment proceedings and issued two partial summary judgment orders, each accompanied by a permanent injunction. *See* JA575-577 (Order); JA578-JA658 (Opinion); JA663-667 (Order); JA668-JA777 (Opinion).

In its first partial summary judgment order, the district court held Section 2(a) unlawful and enjoined implementation of the provision. *See* JA576. The court held that nonpartisan plaintiffs have standing to challenge Section 2(a) of the Order because the implementation of the provision would "directly interfere with their core activities, including providing voter registration services," JA606; *see League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). And the court held the partisan plaintiffs also had standing because Section 2(a) of the Order would have an "effect on their ability to register new voters as members and supporters of the Democratic Party." JA610.

The district court also held that the dispute was ripe for judicial review. *See* JA618. The court understood Section 2(a) to dictate that the Commission must include a documentary proof-of-citizenship

requirement on the Federal Form regardless of its consultation with the States and any subsequent determination on whether the requirement is "necessary" for the States to administer their own eligibility requirements. JA619-JA620; *see also* 52 U.S.C. § 20508(a)(1)-(2), (b). Based on that understanding, the court viewed the plaintiffs' challenge as ripe, noting that the Commission had already started to implement Section 2(a) by sending a letter to State chief election officials seeking consultation on the Federal Form. *See* JA620-JA625; *see also* JA341.

On the merits, the district court found Section 2(a) could not be lawfully implemented because "the Constitution grants the President no authority to direct the [Commission] to change the content of the Federal Form, and Congress has not delegated any such power to him." JA631. Neither the Elections Clause nor any congressional enactment provide the President with "any responsibility for the content of the Federal Form." JA633. The court further rejected any argument that the Vesting Clause or the Take Care Clause might empower the President to direct the outcome of the Commission's rulemaking process that Congress has required by statute. JA635. The court explained that the President has no constitutional duty to prescribe the contents of

election regulations. JA637. Under the Vesting and Take Care Clauses, the President may remove and replace a subordinate in whom he lacks confidence, but he cannot "direct control over the exercise of other powers that Congress has delegated to that person." JA638. Because the court concluded that plaintiffs had demonstrated a separation-of-powers violation, it did not resolve the questions whether Section 2(a) was consistent with the NVRA or would impose an unconstitutional burden on U.S. citizens' right to vote. JA644.

In its second partial summary judgment opinion, the district court held that Sections 2(d) and 3(d) of the Order were unlawful and enjoined their implementation. *See* JA664-JA665; JA668-JA777. As above, the court held that plaintiffs had standing to challenge the provisions. *See* JA721. On the merits of the challenge to Section 2(d), the court determined that the NVRA creates a "mandatory duty," JA726, for State-designated voter registration agencies, including several federal agencies, to make the Federal Voter Registration Form available, and leaves no discretion for agencies to "'assess citizenship prior to providing' the Federal Form to 'enrollees of public assistance programs,'" JA726 (quoting Order § 2(d), 90 Fed. Reg. at 14,006).

Moreover, the court reasoned that "regulating federal election procedures is the exclusive province of Congress and the States," and thus, Section 2(d) violates the constitutional separation of powers. JA727.

The district court also granted summary judgment and permanently enjoined Section 3(d). *See* JA665. The court held that Section 3(d) "oversteps the constitutional separation of powers" because it is "contrary to the express will of Congress," and "there is neither statutory nor constitutional authority for Section 3(d)'s instruction" given that "our Constitution entrusts matters of election regulation exclusively to Congress and the States." JA744. The court explained that adding a documentary proof-of-citizenship requirement to the Federal Post Card Application for overseas voters is "plainly incompatible" with UOCAVA because the statute provides that voter eligibility is to be verified by sworn affirmation and because Congress provided for a "post card form," which is evidence that Congress did not intend to allow for "the addition of extraneous requirements that would require attaching documentation to the form." JA745 (emphasis and quotation marks omitted). Plaintiffs also brought APA challenges to

Sections 2(d) and 3(d), which the district court dismissed for lack of final agency action. *See* JA735; JA753.

Finally, in its third opinion, the district court entered its final judgment in defendants' favor on Sections 4(a), 7(a), and 7(b), dismissing those claims and reiterating its prior summary judgment holdings on Section 2(a), 2(d), and 3(d). *See* JA780-JA784. The appeals from each of the partial summary judgment orders and the final judgment have been consolidated.

## SUMMARY OF ARGUMENT

1. The Order directs the Election Assistance Commission only to "take appropriate action" that is "consistent with applicable law." *See* 90 Fed. Reg. at 14,006, 14,010. Carrying out Section 2(a) requires the Commission to consult with the chief election officers of the States regarding a documentary proof-of-citizenship requirement, and to add that requirement only if, after such consultation, the Commission determines that adding the requirement is "necessary." The district court erroneously treated this provision as directing the Commission to add such a requirement without regard to the statutory consultation process

with the States and without regard to whether the Commission determined the requirement would be necessary. That was error; Section 2(a) simply directs the Commission to take lawful action consistent with the requirements of the NVRA to amend the Federal Form.

Because the outcome of the Commission's consultation with the States, and whether the Commission will make any finding of necessity, is purely speculative, plaintiffs' challenges are not ripe for review. The Supreme Court has repeatedly held that where a presidential directive depends on contingent future events to be carried out, judicial review is premature. *See, e.g.*, *Trump v. New York*, 592 U.S. 125, 130-34 (2020) (per curiam). Like the presidential memorandum before the Supreme Court in *Trump v. New York*, the Order here makes clear the policy preferences of the President, but also that the Commission shall take appropriate action consistent with law to carry those preferences out. Plaintiffs cannot establish that Section 2(a) is "fit" for review because future events have not yet occurred and, indeed, they "'may not occur as anticipated.'" *Texas v. United States*, 523 U.S.

296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

Even if the district court was correct that the challenges to Section 2(a) are justiciable, it erred in concluding the provision was unlawful. Properly understood, the Order is consistent with the NVRA. The Elections Clause authorizes Congress to regulate the mechanics of federal elections and Congress has delegated the authority to develop and amend the Federal Form to the Election Assistance Commission. The President, as the head of the Executive Branch, can direct his subordinates to carry out his policy preferences consistent with statute without running afoul of the Elections Clause or the separation of powers. And even if plaintiffs are correct that the Commission cannot add a documentary proof-of-citizenship clause consistent with the NRVA, that is a statutory—not constitutional—holding and not justiciable absent an APA challenge (or other cause of action) not available here.

2. For similar reasons, Section 2(d) is lawful. Section 2(d) of the Order is consistent with the NVRA. The NVRA requires federal voter registration agencies to distribute the Federal Form, but nothing in

Section 2(d) instructs federal voter registration agencies to withhold the Federal Form under any circumstances. For the same reason, plaintiffs' challenge is not ripe: it is not yet clear how federal voter registration agencies will implement Section 2(d), and it is entirely speculative whether they would do so in a manner inconsistent with statute.

3. Plaintiffs' argument with respect to Section 3(d) is also without merit. The Secretary of Defense is authorized to "prescribe an official post card form," for military and overseas voters, 52 U.S.C. § 20301(b)(2), and that statute does not preclude him from including a documentary proof-of-citizenship requirement as part of the voter registration application post card form. The district court read far too much into the statute's use of a standard oath and the words "post card," neither of which implicitly precludes a documentary proof-of-citizenship requirement. Similarly, plaintiffs' challenge is not ripe; at this stage of the litigation, it is unclear how the Secretary will implement Section 3(d), and it is mere speculation whether he would do so in a way inconsistent with the statute. Finally, as above, even if the court were to conclude the Secretary would exceed his statutory authority by adding such a requirement to the Federal Post Card

Application, that is a statutory, not a constitutional claim. The court erred by treating the Order as violating the separation of powers and the Elections Clause.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *See Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016).

## ARGUMENT

### I. SECTION 2(a) OF THE ORDER IS LAWFUL.

Section 2(a)(i)(A) of Executive Order 14,248 directs the Election Assistance Commission to "take appropriate action to require . . . documentary proof of United States citizenship" on the Federal Form used for voter registration. 90 Fed. Reg. at 14,006. The district court enjoined this portion of the Order because, in its view, Section 2(a) commands that the Commission add a documentary proof-of-citizenship requirement to the Federal Form regardless of any consultation with the States and regardless of whether that consultation results in the conclusion that adding such a requirement is "necessary" within the meaning of 52 U.S.C. § 20508(b)(1). *See* JA619-JA620. But Section 2(a)

does no such thing; it simply directs the Commission to take lawful action consistent with statutory requirements. As a result, not only is the Order lawful, but because it directs the Commission to begin a statutory and regulatory process that is not yet complete, plaintiffs' challenge is not ripe. *See, e.g.*, *Trump v. New York*, 592 U.S. 125, 130-33 (2020) (per curiam).

### A. Plaintiffs' Challenge to Section 2(a) is Not Ripe.

The district court erred when it concluded that the dispute here was ripe for judicial review; its conclusion turns on an erroneous view that the Order short-circuits the statutory consultation process with the States and requires a documentary proof-of-citizenship requirement regardless of whether the Commission, after consultation, finds that such a requirement is "necessary."

However, Section 2(a) does not pretermit the consultation process or disregard whether the Commission finds that a documentary proof-of-citizenship requirement is "necessary." Rather, Section 2(a) instructs the Commission to "take *appropriate action* to require" documentary proof of citizenship as part of the Federal Form. 90 Fed. Reg. at 14,006 (emphasis added). The "appropriate action" must be consistent with

law, including Section 20508, which provides that the Commission shall develop the form "in consultation with the chief election officers of the States." 52 U.S.C. § 20508(a)(2); *see also* 90 Fed. Reg. at 14,010 (directing that the Order "shall be implemented consistent with applicable law"). To carry out Section 2(a), the Commission would need to take two actions, one procedural and one substantive, neither of which has yet been completed.

The first "appropriate action" under Section 2(a)(i) is for the Commission to consult with the chief election officers of the States. That procedural requirement is consistent with the NVRA's instruction that the Commission shall develop the Federal Form "in consultation with the chief election officers of the States." 52 U.S.C. § 20508(a)(2). The second "appropriate action" needed to carry out Section 2(a) is that if the Commission, after consulting with the States, determines that a documentary proof-of-citizenship requirement is "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," 52 U.S.C. § 20508(b)(1), then the Commission would need to amend the Form's contents to add the requirement, which

requires notice-and-comment rulemaking, *see* JA335 (Declaration of Commission Executive Director Brianna Schletz). The Commission prescribes the contents of the Federal Form by regulation. *See* JA335; *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013) (The Commission has "rulemaking authority to prescribe the contents of that Federal Form."). "In order to change the content of the Federal Form, the [Commission] must first update the regulation" and "must follow the Administrative Procedural Act's notice-and-comment rule-making process." JA335. Any proposed changes to the regulation must be approved by three of the four Commissioners. JA335. Although the Commission began the consultation process, no determination has been made about the necessity of adding the documentary proof-of-citizenship requirement and no rulemaking has commenced.

Thus, the Order functions as an internal directive from the President to subordinate officials and agencies to engage in future policymaking. *See Trump v. New York*, 592 U.S. at 133-34. Indeed, plaintiffs' suits here are comparable to the suit the Supreme Court dismissed as premature in *Trump v. New York*. There, President Trump issued a memorandum during the 2020 decennial census that

"announced a policy of excluding 'from the apportionment base aliens who are not in a lawful immigration status.'" *Id.* at 129-30 (quoting Memorandum on *Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020)). The directive also called for "implementation 'to the maximum extent feasible and consistent with the discretion delegated to the executive branch.'" *Id.* at 130 (quoting 85 Fed. Reg. at 44,680). A group of plaintiffs sued before the memorandum had been implemented and a three-judge district court enjoined its implementation. *Id.* The Supreme Court vacated the judgment, holding that that the "standing and ripeness inquiries both lead to the conclusion that judicial resolution of this dispute is premature." *Id.* at 134.

The Supreme Court has recently reiterated these principles when it granted an application to stay an injunction prohibiting the implementation of Executive Order 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17,125 (Apr. 3, 2026), which, *inter alia*, directed the U.S. Postal Service to engage in policymaking regarding the use of the mail for mail-in ballots in federal elections. *See Trump v. California*, 609 U.S. —, No. 26A124

2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (per curiam) (explaining that the district court lacked jurisdiction to issue a decision "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all" (quoting *Trump v. New York*, 592 U.S. at 131)); *see also DSCC v. Trump*, No. 26-5193, 2026 WL 2168617, at *1 (D.C. Cir. July 28, 2026) (per curiam) (unpublished) (holding that challenge to Executive Order 14,399 "likely [wa]s unripe for review in its present posture"). In *Trump v. New York*, the Court acknowledged that "[t]he President, to be sure, ha[d] made clear his desire to exclude aliens without lawful status from the apportionment base." 592 U.S. at 131. Even so, "the President qualified his directive by providing that the Secretary should gather information 'to the extent practicable' and that aliens should be excluded 'to the extent feasible.'" *Id.* (quoting 85 Fed. Reg. at 44,680). As a result, "[a]ny prediction how the Executive Branch might eventually implement this general statement of policy [wa]s 'no more than conjecture' at [that] time." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). The Court explained "[t]he Government's eventual action will reflect both legal and practical

constraints, making any prediction about future injury just that—a prediction." *Id.* at 133.

Much like the Presidential Memorandum at issue in *Trump v. New York*, and the Executive Order challenged in *Trump v. California*, the Order here also specifies that the Commission "shall take *appropriate* action," Order § 2(a)(i), 90 Fed. Reg. at 14,006 (emphasis added), and that the Order "shall be implemented consistent with applicable law," *id.* § 11(b), 90 Fed. Reg. at 14,010. The record demonstrates that such "appropriate action" will require updating the Federal Form through notice-and-comment rulemaking. *See* JA335. As in *Trump v. New York*, when plaintiffs brought this suit, the Commission "ha[d] not altered" the Federal Form "in a concrete manner that will predictably change" voter registration. 592 U.S. at 132. The "source of any injury to the plaintiffs is the action that the [Commission] *might* take in the future," *Trump v. New York*, 592 U.S. at 133-34, after notice-and-comment rulemaking to implement Section 2(a), *see* JA335, not Section 2(a) itself.

As the district court noted, the Commission has followed the Order's instruction to begin the consultation process by sending

appropriate letters to the chief election officers of the States. *See* JA623-JA624. The letters are only the first step in the consultation process and do not change the fact that the outcome of that process is still uncertain, rendering plaintiffs' challenge not ripe. *See* JA345 (April 16, 2025 follow-up notification to States, asking for comments by May 2, 2025, and stating that "[t]he purpose of this initial consultation is to guide the [Commission] in any proposed changes, which require further comment").

The district court thought that the letters reflected that the Order was not "an open-ended suggestion to consider including a documentary-proof-of-citizenship requirement of an unknown form." JA623. But just as the procedural requirements of the APA contain no "'open-mindedness' test" requiring agencies to have a "flexible and open-minded attitude," during a notice-and-comment period, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685 (2020) (quotation marks omitted), neither does the NVRA impose such a procedural rule that the Commission approaches it consultations without an end goal in mind. And the letter itself indicated that it

sought consultation "on how states would propose to implement Section 2 of EO 14248, *if* required." JA341 (emphasis added).

Moreover, the district court's insistence that "there is no uncertainty about what the [Commission] has been ordered to do," JA621, improperly disregards the Order's repeated limitations that its directives should be carried out only to the extent "appropriate," 90 Fed. Reg. at 14,006, and "consistent with applicable law," *id.* at 14,010. As this Court explained in *Building & Construction Trades Department v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002), when the President issues an Executive Order that directs his subordinates to proceed "[t]o the extent permitted by law,"—or as here, as "appropriate" and "consistent with applicable law"—that directive, by definition, mandates action only if the agency may lawfully implement the Executive Order, *id.* at 33 (alteration in original). "[I]f the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Id.* In *Allbaugh*, this Court distinguished such an Executive Order from the order directing the seizure of privately owned steel mills that the Supreme Court held unlawful in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585

(1952), noting that the *Youngstown* order was “self[-]executing”; it expressly directed the seizure of the mills, without any qualifying language. *Allbaugh*, 295 F.3d at 33 (“Indeed, had President Truman merely instructed the Secretary of Commerce to secure the Government’s access to steel ‘[t]o the extent permitted by law,’ *Youngstown* would have been a rather mundane dispute over whether the Secretary had statutory authority to act as he did.”); *see also Trump v. Am. Fed’n of Gov’t Emps.*, 145 S. Ct. 2635, 2635 (2025) (Sotomayor, J., concurring in the grant of a stay of a preliminary injunction) (“[T]he relevant Executive Order directs agencies to plan reorganizations and reductions in force ‘consistent with applicable law,’” and the Supreme Court has “no occasion to consider whether they can and will be carried out consistent with the constraints of law” in a facial challenge to the Order).

Here, by contrast, the Executive Order *does* contain limiting language and thus is *not* self-executing. If there is no appropriate way to implement the Order, the Order “instructs the agency to follow the law.” *Allbaugh*, 295 F.3d at 33. Moreover, *Trump v. New York* explicitly rejects the district court’s reasoning—placing nearly dispositive weight

on similar language to order dismissal on the grounds of both standing and ripeness. 592 U.S. at 131 (emphasizing that "the President qualified his directive by providing that the Secretary should gather information 'to the extent practicable' and that aliens should be excluded 'to the extent feasible'").

By its plain language, Section 2(a) contemplates that future action is required—the Commission must find the requirement "necessary" and then must undertake a rulemaking process before any changes to the Federal Form can be finalized. Under these circumstances—where a final policy decision has not been made—plaintiffs cannot establish that Section 2(a) is "fit" for review because future events have not yet occurred and, indeed, they "may not occur as anticipated." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)); *see also Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967) (explaining that the basic function of ripeness jurisprudence is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements").

### B. Section 2(a) Does Not Violate the Constitution.

The district court correctly disposed of the plaintiffs' APA claims on the ground that there was no final agency action, which further underscores the above explanation for why the challenge is not ripe, *see supra* Part I.A, but erred when it concluded that the Order violated the Constitution. The court reasoned that Section 2(a) is constitutionally invalid because "neither the Constitution nor any statute explicitly grants the President the power to direct that a documentary-proof-of-citizenship requirement be added to the Federal Form." JA631.

As with the ripeness inquiry, the district court's merits analysis was colored by its incorrect view that the Order pretermits the consultation process and disregards whether the Commission finds that a documentary proof-of-citizenship requirement is "necessary." *See* JA633-JA635.[4] The court reasoned that because the President did not—

[4] The district court wrongly relied on a representation by counsel at a preliminary injunction hearing that the Order directs the Commission to add a documentary proof-of-citizenship requirement to the Federal Form regardless of the consultation process and any finding of necessity. *See* JA639. That is not the government's view, as the court itself acknowledged, citing the summary judgment papers, and there is no basis for judicial estoppel given that the government did not prevail at the preliminary injunction stage. *See* JA640 & n.41. The court was

*Continued on next page.*

in its view—have statutory authority to issue Section 2(a), the Order could not be constitutional under the separation of powers or the Elections Clause. *See* JA632-JA635. This was error for two reasons. First, the President, as head of the Executive Branch, may direct Executive Branch officials in whom Congress has vested authority to amend the Federal Form consistent with their statutory authority without running afoul of the Elections Clause. And second, properly understood, the Order is consistent with the NVRA. There is no separation-of-powers violation with the President directing subordinate officials to act in a manner consistent with their statutory authority.

1. The Elections Clause provides that "the Congress may at any time by Law make or alter" regulations that govern the time, place, and manner of federal elections, U.S. Const. art. I § 4, cl. 1, which allows Congress to legislate with respect to "the mechanics" of federal elections, including "regulations relating to registration," and "*how*

---

wrong to freeze the government's understanding of Section 2(a) "on the basis of counsel's initial footfault." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 309 n.5 (2000) (Scalia, J., concurring in the judgment); *see Minerals Separation, Ltd. v. Butte & Superior Mining Co.,* 250 U.S. 336, 352 (1919) ("[P]arties should not be held rigidly to statements made by their counsel in the stress of argument. . . .").

federal elections are held, but not *who* may vote in them," *Inter Tribal*, 570 U.S. at 9, 16 (quotation marks omitted). In Section 20508, Congress has given the Commission—an Executive Branch entity—the statutory authority to "develop a mail voter registration application form for elections for Federal office." 52 U.S.C. § 20508(a)(2); *see also* JA586 (acknowledging the NVRA as an exercise of Congress's Elections Clause power). The district court concluded that the Elections Clause "leav[es] no role for the President to order specific changes to the Federal Form." JA632. But that answers the wrong question. The relevant question is not whether the President can command changes to the Federal Form—it is whether the President can direct Executive agencies, like the Commission, to take certain actions consistent with their statutory duties.

That is what Section 2(a) does—it simply directs the Commission to commence its rulemaking process. While the district court was correct that Section 2(a) contains a "command[]" to the Commission, JA622 (quoting *Common Cause v. Trump*, 506 F. Supp. 3d 39, 53 n.8 (D.D.C. 2020)), it is a lawful command to his subordinates within the Executive Branch that is consistent with the governing statute. It is

undisputed that Congress may lawfully authorize the Commission to amend the Federal Form under the Elections Clause, as it has in Section 20508.

Article II, Section 1 of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. "[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' . . . throughout the Executive Branch of government, of which he is the head." *Allbaugh*, 295 F.3d at 32 (citation omitted); *see Myers v. United States*, 272 U.S. 52, 135 (1926) (explaining that the President "may properly supervise and guide [agency officials'] construction of the statutes under which they act in order to secure that unitary and uniform execution of the laws which [Article II] of the Constitution evidently contemplated in vesting general executive power in the President alone").

Neither plaintiffs nor the district court contested that members of the Commission—bipartisan or otherwise—are part of the Executive Branch. The President's power to "supervise[] those who wield executive power on his behalf" is a core constitutional authority that "follows from

the text of Article II." *Trump v. United States*, 603 U.S. 593, 608 (2024) (quoting *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020)). The President, while not a "lawmaker," is the head of the Executive Branch, and he may "direct that a congressional policy be executed in a manner prescribed by Congress." *Youngstown Sheet & Tube Co.*, 343 U.S. at 587-88.

The Commission exercises executive power when it carries out its statutory duties and is therefore subject to the administrative control of the President. Indeed, the district court recognized as much when it conceded the President had the ability to remove its members. JA636. As this Court has recognized, "[t]he authority of the President to control and supervise executive policymaking is derived from the Constitution." *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981). The district court was thus wrong (JA638) to conclude that the President may not direct policymaking *ex ante* and may only control his subordinates through removal. *See Sierra Club*, 657 at 406 n.524 ("The ordinary duties of officers prescribed by statute come under the general administrative control of the President by virtue of the general grant to

him of the executive power, and he may properly supervise and guide their construction of the statutes under which they act . . . .").

Moreover, the district court's so-called alternative holding that the text of the NVRA must be read narrowly because Congress "would not have delegated its Elections Clause authority to regulate the content of the Federal Form to the [Commission] if that authority could be exercised unilaterally by the President" is no more persuasive. JA643. Again, this holding rests on an incorrect view of the directive in the Order, and if anything, counsels in favor of reading the Order, rather than the statute, as defendants have urged. Moreover, the district court's suggestion that because the Commission is a bipartisan independent commission, the President would be entitled to less authority to exercise control over its activity is belied by the Supreme Court's recent decision in *Trump v. Slaughter*, 146 S. Ct. 2283, 2303 (2026) ("[I]ndependent agencies are not 'independent' in the sense that they are free of the President. . . ."); *see also id.* at 2305 ("The [agency] unquestionably exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested.").

2. Plaintiffs' fundamental contention is that the Commission cannot add a documentary proof-of-citizenship requirement consistent with the NVRA, but that is a statutory, not a separation-of-powers, argument. Contrary to the district court's view, this is not a case like *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015), where Congress expressly articulated a particular view and the President had adopted "measures incompatible" with that statutory directive, JA634 (quoting *Zivotofsky*, 576 U.S. at 10); *see also Zivotofsky*, 576 U.S. at 10 (explaining that the Secretary of State "contends that [Section] 214(d) . . . requir[es] the President to contradict his recognition position regarding Jerusalem in official communications" (quotation marks omitted)). Nor is it like *Youngstown*, where the President directed the Secretary of Commerce to seize and operate the nation's steel mills. *See* 343 U.S. at 582. No statutory authority provided for government seizure of the steel mills at all. *See id.* at 585-86. There, the Constitution did not empower the President to issue his order because "[t]he President's order d[id] not direct that a congressional policy be executed in a manner prescribed by Congress" but directed "a presidential policy [to] be executed in a manner prescribed by the President." *Id.* at 588.

Here, Congress provided the Commission with the authority to amend the Federal Form, and the Order directs the Commission to use that authority consistent with the President's policy priorities. *See supra* pp. 22-29. The Order is consistent with statutory authority and does not seek to unilaterally "alter the content of the Federal Form." JA633. As outlined above, Section 2(a) is consistent with the requirements of Section 20508, and the savings clause in Section 11(b) of the Order (directing that it "shall be implemented consistent with applicable law") further reinforces this view.

Moreover, the statute allows the Commission to require documentary proof-of-citizenship following the consultation process if it determines it would be necessary. This Court has recognized that, as the form's developer, the Commission determines what identifying information "is necessary" to assess an applicant's eligibility to vote. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 10 (D.C. Cir. 2016) ("It would be illogical for Congress to provide in section 20508(b)(1) that the consultant, rather than the developer, would determine 'necessity.'"); *see also Inter Tribal*, 570 U.S. at 19 ("[I]t is

surely permissible if not requisite for the Government to say that necessary information which *may* be required *will* be required.").[5]

The President does not run afoul of the separation of powers by directing an Executive Branch entity, like the Commission, take certain actions consistent with its statutory duties. Section 2(a) simply directs the Commission to begin the process for adding a documentary-proof-of-citizenship requirement to the Federal Form and instructs that if it determines such a requirement is necessary, then it is statutorily required to add it to the Form. And even if this Court were to conclude that such an action is beyond the Commission's authority under Section 20508, that is not a separation of powers or Elections Clause violation. *See Global Health Council v. Trump*, 153 F.4th 1, 7 (D.C. Cir. 2025) (The plaintiffs "may not bring a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory."). Because Section 2(a), properly understood, is consistent with statutory and constitutional authority, and the President has the authority to

[5] In *Inter Tribal*, the Supreme Court left open the question whether the Commission could decline to require information otherwise deemed "necessary," but that question is not presented by this case. *See* 570 U.S. at 19.

direct the Commission to undertake those lawful actions, the district court's constitutional holding is in error.

## II. SECTION 2(d) OF THE ORDER IS LAWFUL.

Section 2(d) of the Order requires "[t]he head of each Federal voter registration executive department or agency" to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs." 90 Fed. Reg. at 14,007. The district court erred in enjoining this provision.

### A. Section 2(d) is Consistent with the NVRA and Does Not Violate the Separation of Powers.

The district court correctly rejected plaintiffs' statutory claims on the ground that the APA did not provide plaintiffs with an avenue to judicial review because "the issuance of an executive order is not a final agency action that is reviewable within the APA framework." JA713. The court also correctly noted that plaintiffs could not satisfy the "especially demanding" standard required to demonstrate that the Order is *ultra vires* in violation of the NVRA. *See* JA714 (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022)). Instead, the court erroneously concluded that plaintiffs had established both a cause of action and a meritorious claim that the

Order violates the separation of powers because neither the Elections Clause nor the NVRA provides "discretion for Executive Branch agencies to 'assess citizenship prior to providing' the Federal Form' to 'enrollees of public assistance programs,' as Section 2(d) of the Executive Order purports to require." JA726-JA727. As outlined above, however, that is merely a statutory claim and, even if correct, would not constitute a constitutional violation. *See supra* pp. 38-39; *see also Global Health Council*, 153 F.4th at 7.

On its face, Section 2(d) is a directive to federal Executive agencies, which the President has the constitutional authority to direct. *See* 90 Fed. Reg. at 14,007; *see also Allbaugh*, 295 F.3d at 32. Section 2(d) directs "[t]he head of each Federal voter registration executive department or agency . . . under the National Voter Registration Act, 52 U.S.C. [§] 20506(a)," to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs," 90 Fed. Reg. at 14,007. The NVRA permits States to designate federal agencies as voter registration agencies with their agreement and requires certain federal offices to be so designated. 52 U.S.C.

§ 20506(a)(1)-(2). Section 2(d) therefore is directed to those federal agencies that are designated as voter registration agencies.

Nothing in Section 2(d) is contrary to the statutory requirement. The Order nowhere states that federal voter registration agencies should withhold the Federal Form under any circumstances (although the statute permits withholding the form when the applicant declines in writing to register to vote, 52 U.S.C. § 20506(a)(6)(A)). Nor does Section 2(d) define what steps a federal voter registration agency should take to "assess citizenship." 90 Fed. Reg. at 14,007. Again, as above, this case is unlike *Youngstown*, 343 U.S. at 582, or *Zivotofsky*, 576 U.S. at 10, where the President sought to exercise his independent constitutional authority absent any statutory input from Congress or contrary to Congress's expressed will, respectively. Here, by contrast, Congress has already required that those registering to vote attest that they are citizens. 52 U.S.C. § 20508(b)(2). It has also required voter registration agencies that provide services or assistance to "distribute" the Federal Form "with each application for such service or assistance." *Id.* § 20506(a)(6)(A). A federal voter registration agency may therefore implement Section 2(d) by asking an applicant, prior to distributing the

Federal Form, whether he or she is a citizen and reminding the applicant that the Federal Form itself requires attestation of citizenship under penalty of perjury. *See id.* § 20508(b)(2). In no event, however, should the federal voter registration agency withhold the distribution of the Federal Form unless the applicant "in writing, declines to register to vote." *Id.* § 20506(a)(6)(A). The inquiry thus serves to remind individuals of the requirement that only citizens are eligible to vote.

Particularly in light of the Order's savings clause, 90 Fed. Reg. at 14,010, and the lawful manner in which the Order may be implemented, Section 2(d) should not have been enjoined based on the speculation that Section 2(d) could be implemented in unlawful ways. *See supra* pp. 27-29. And, as above, even assuming Section 20508(b) does not grant federal agencies the authority to "assess citizenship" prior to distributing the Federal Form, *see* JA726-JA727, that is a statutory claim and "cannot be transformed into [a] constitutional one[]," *Global Health Council*, 153 F.4th at 16.

### B. Plaintiffs' Challenge to Section 2(d) is Not Ripe.

For the same reasons, any challenge to Section 2(d) would not be ripe. Although there are lawful ways in which federal voter registration

agencies can implement Section 2(d), at this juncture no federal voter registration agency has indicated precisely how it will implement the provision. Thus, at this point in time, "[a]ny prediction how the Executive Branch might eventually implement" Section 2(d) is "'no more than conjecture.'" *Trump v. New York*, 592 U.S. at 131 (quoting *Lyons*, 461 U.S. at 108). Because plaintiffs can only speculate that Section 2(d) will be implemented in a way contrary to federal law, a ripe claim must await actual implementation of the Order by a federal voter registration agency in a manner that is allegedly inconsistent with Section 20506.

## II. SECTION 3(d) OF THE ORDER IS LAWFUL.

Section 3(d) of the Order directs "[t]he Secretary of Defense" to "update the Federal Post Card Application . . . to require . . . documentary proof of United States citizenship." 90 Fed. Reg. at 14,007 (citation omitted). The district court erred when it held that Section 3(d) is unconstitutional and that plaintiffs' claims are ripe.

### A. Plaintiffs' Challenge to Section 3(d) is Not Ripe.

Even if Section 3(d) is a "directive" to the Secretary to include a documentary proof-of-citizenship requirement in the federal post card application form, it remains to be seen how the

Secretary will implement this requirement and whether he can do so consistent with any limitation that might be implied by the statutory limitation that the application be in post card form. As articulated above, until that implementation occurs, plaintiffs' claim that the Secretary cannot implement Section 3(d) in a manner consistent with the statutory text remains theoretical and unripe. *See supra* Part I.A.

### B. Section 3(d) is Consistent with Statutory Authority and Constitutional.

The district court erred in concluding that Section 3(d) conflicts with UOCAVA and that as a result, it violates the Elections Clause and the separation-of-powers. JA738; JA750-JA751. As above, these arguments are statutory arguments disguised as separation-of-powers arguments. *See supra* pp 38-39. Moreover, the statute authorizes the Secretary to "prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application," 52 U.S.C. § 20301(b)(2), and on its face, that provision does not preclude the Secretary from requiring documentary proof-of-citizenship as part of the voter registration application.

Although the Secretary must "consult State and local election officials" before doing so, 52 U.S.C. § 20301(b)(1), UOCAVA does not compel the Secretary to make a specific finding that a change is "necessary," as the Commission must do before adding additional information to the Federal Form under Section 20508(b). In this way, the text of Section 20301 provides the Secretary with greater latitude to implement changes to the federal post card form than the Commission has in changing the Federal Form. Yet the district court counterintuitively reached the opposite conclusion. *See* JA745-JA746. Its interpretation of Section 20301(b)(2) would leave no room for the Secretary to add such a requirement under any circumstances.

The district court also erred in ascribing far too much significance, JA745, to the provision directing the Secretary to "prescribe a standard oath for use with any document under this chapter affirming that a material misstatement of fact in the completion of such a document may constitute grounds for a conviction for perjury." 52 U.S.C. § 20301(b)(7). That provision does not expressly relate to citizenship in any way and does not implicitly forbid the Secretary from requiring documentary proof-of-citizenship under his authority in Section 20301(b)(2). After all,

under Section 20508 an applicant using the Federal Form must "attest[]" to citizenship "under penalty of perjury," *id.* § 20508(b)(2)(B), (C), but that does not preclude the Commission from adding a documentary proof-of-citizenship requirement to the Federal Form under appropriate circumstances. *See Inter Tribal*, 570 U.S. at 19-20. Similarly, UOCAVA's "standard oath" provision provides no basis for precluding the Secretary from adding a similar documentary proof-of-citizenship requirement to the post card form.

Likewise, the district court read too much into the words "post card" in Section 20301(b)(2), construing those words to as "strong evidence" that "Congress did not intend to authorize the addition of extraneous requirements that would require attaching documentation," that in the court's view, would be an impossibility with a literal postcard. JA745. While the requirement that the form be a "post card" might place some limit on the format of the voter registration application, the statute does not preclude a proof-of-citizenship requirement unless it is impossible to provide documentary proof of citizenship within the confines of a "post card form." There is no reason to suppose that is the case. Indeed, the "Federal Post Card Application"

as currently constituted is—as the court acknowledged—"not literally a standard-sized postcard," JA745-JA746, but instead a two page 8 ½ x 11 inch form that explains to applicants that they can "[r]emove the adhesive liner from the top and sides" of the form and "[f]old and seal tightly," or, in the alternative, they may "print[] the form, fold it, and seal it in an envelope," Fed. Voting Assistance Program, *Voter Registration and Absentee Ballot Request*, *supra*. The form adds that "many states accept [the Federal Post Card Application] by email and fax." *Id.* The court concluded that the currently existing post card form is lawful because it is "a simple mail piece designed to be sent without an envelope." JA746. It did not explain, however, why it would be impossible for any documentary proof-of-citizenship requirement to also comply with that standard.

The district court also erred in relying on the statute's ostensible purpose to "mak[e] it easier for eligible Americans to vote while serving their country overseas or otherwise living outside the United States." JA746. Invoking that amorphous congressional purpose is not a sound foundation for reading into the words "post card" a hidden and

inflexible statutory prohibition on a documentary proof-of-citizenship requirement.

Finally, the district court erred when it concluded the Secretary cannot rely on his power to "prescribe" the form of the Federal Post Card Application in order to add a documentary proof-of-citizenship requirement because the statutory duty is "essentially ministerial," JA747 (quotation marks omitted), and to view it otherwise would run afoul of the Elections Clause. Adding a documentary proof-of-citizenship requirement is not an infringement on the States' ability to determine who votes in federal elections. *See* JA749. There is no dispute that only U.S. citizens may vote in federal elections. Asking voters to provide documentary proof of citizenship rather than an attestation, on penalty of perjury, of citizenship is not a determination of voter qualification. *See* JA750. Rather, it is well within Congress's ability to regulate the time, place, and manner of elections. *See Inter Tribal*, 570 U.S. at 19. And as with Sections 2(a) and 2(d), *see supra*, even if the district court was correct that the Secretary would exceed his statutory authority were he to add a documentary proof-of-citizenship requirement to the Federal Post Card Application, that is a statutory violation, not a

constitutional one. *See Global Health Council*, 153 F.4th at 10. Given that the court has recognized that plaintiffs' APA challenges are not yet ripe for adjudication, it should have dismissed the additional statutory claims as well.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the permanent injunctions vacated.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL S. RAAB
*/s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*

October 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,002 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook14-point font, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron

# ADDENDUM

## TABLE OF CONTENTS

52 U.S.C. § 20508 ........................................ A1

52 U.S.C. § 20301 ........................................ A2

**52 U.S.C. § 20508**

**§ 20508. Federal Coordination and Regulations**

(a) In general

The Election Assistance Commission—

(1) in consultation with the chief election officers of the States, shall prescribe such regulations as are necessary to carry out paragraphs (2) and (3);

(2) in consultation with the chief election officers of the States, shall develop a mail voter registration application form for elections for Federal office;

(b) Contents of mail voter registration form

The mail voter registration form developed under subsection (a)(2)—

(1) may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;

(2) shall include a statement that—

(A) specifies each eligibility requirement (including citizenship)

(B) contains an attestation that the applicant meets each such requirement; and

(C) requires the signature of the applicant, under penalty of perjury;

(3) may not include any requirement for notarization or other formal authentication;

* * *

**52 U.S.C. § 20301**

**§ 20301. Federal Responsibilities**

* * *

(b) Duties of Presidential designee

The Presidential designee shall—

(1) consult State and local election officials in carrying out this chapter, and ensure that such officials are aware of the requirements of this Act;

(2) prescribe an official post card form, containing both an absentee voter registration application and an absentee ballot application, for use by the States as required under section 20302(a)(4) of this title;

* * *